UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL J. SIMMS,<br><br>    Plaintiff,<br><br>    v.<br><br>STEPHEN SINCLAIR, *et al.*,<br><br>    Defendants. | CASE NO. 3:19-cv-05323-RBL-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED JANUARY 31, 2020 |

This matter is before the Court on defendants' motion for judgment on the pleadings (Dkt. 39) and plaintiff's sur-reply and motion to strike defendants' reply in support of their motion for judgment on the pleadings. *See* Dkt. 46.

Plaintiff, who is *pro se*, brings an action under 42 U.S.C. § 1983 challenging interference with his incoming and outgoing mail by Department of Corrections ("DOC") employees and officials. Even if the DOC employees did what plaintiff alleges, plaintiff has not shown a violation of constitutional rights that were clearly established at the time. Therefore, his claims of constitutional violations against defendants in their individual capacities should be dismissed

REPORT AND RECOMMENDATION - 1

with prejudice. Because his claims against defendants in their official capacities are barred by the Eleventh Amendment, these claims should be dismissed with prejudice, as well. And because his federal claims should all be dismissed, the Court should not exercise jurisdiction over his remaining, state law claims, which should be dismissed without prejudice. Thus, this Court recommends that the motion for judgment on the pleadings should be granted. Plaintiff's 142-page motion to strike defendants' reply is stricken, as plaintiff failed to request court permission to file either an overlength motion or a sur-reply in this matter.

## BACKGROUND

In plaintiff's amended complaint, he brings claims against eleven defendants—the Washington State attorney general, various employees and the superintendent of Clallum Bay Corrections Center ("CBCC"), and other DOC employees and officials. *See* Dkt. 33, at 1–3. Plaintiff alleges four incidents in which CBCC staff rejected his incoming or outgoing mail as the basis for his claims.

First, Plaintiff alleges that on December 24, 2018, responsive records to a Public Records Act ("PRA"), ch. 42.56 RCW, request that he made for contact information of students and professors at Eastern Washington University ("EWU") arrived at the CBCC mailroom, where defendant Shellie Lohneis (a mailroom employee) rejected 112 pages of information about students. *See* Dkt. 33, at 4. Defendants Jeri Boe and Lori Lawson—the superintendent and associate superintendent at CBCC—and then defendants Stephen Sinclair (the DOC secretary), Janett Layne (a WDOC administrative assistant), Israel Gonzalez (the DOC headquarters manager), and Belinda Stewart (a member of the DOC review committee) affirmed the rejection. *See* Dkt. 33, at 5.

1   Second, plaintiff alleges that on January 7, 2019, defendant Lohneis rejected outgoing
2  mail—specifically a letter to plaintiff's brother requesting that he place a personal advertisement
3  on a website for plaintiff. *See* Dkt. 33, at 7. Plaintiff alleges that he appealed the rejection to the
4  other defendants. *See* Dkt. 33, at 8.

5   Third, plaintiff alleges that on January 30, 2019, defendant Lohneis rejected responsive
6  records to a PRA request that plaintiff had made for records about a health care professional who
7  had examined plaintiff's son. *See* Dkt. 33, at 10. Plaintiff alleges that on April 17, 2019, he
8  appealed the rejection to the other defendants and then filed a notice of tort claim with the State
9  Office of Risk Management. *See* Dkt. 33, at 11. His claim was denied on April 23, 2019. *See*
10 Dkt. 33, at 11.

11   Fourth, plaintiff alleges that on May 14, 2019, defendant Lohneis rejected eleven pages
12 of responsive records to a PRA request that plaintiff had made for records regarding executives
13 of a financial institution against whom plaintiff intended to bring suit. *See* Dkt. 33, at 13–14.
14 Plaintiff alleges that he appealed the rejection to the other defendants, who upheld the decision.
15 *See* Dkt. 33, at 14–15. Plaintiff alleges that these actions violated his First and Fourteenth
16 Amendment rights and constituted the torts of invasion of privacy, conversion, private nuisance,
17 and intentional infliction of emotional distress. Dkt. 33, at 6–7, 9–10, 11, 13, 15–16.

18   **II. Motion for Judgment on the Pleadings**

19   Defendants have filed a motion for judgment on the pleadings requesting dismissal of
20 plaintiff's claims with prejudice. *See* Dkt. 39. Plaintiff has filed a response, defendants have
21 filed their reply, and the matter is ripe for decision. *See* Dkt. Plaintiff has additionally filed a
22 motion to strike defendants' reply in support of their motion for judgment on the pleadings. *See*
23 Dkt. 46.

24

**DISCUSSION**

**I. Motions to Strike**

As a preliminary matter, the undersigned addresses the parties' various motions to strike.

On November 10, 2019—over a week after the noting date for the motion for judgment on the pleadings—plaintiff filed a 142-page motion, including 20 pages of substantive argument, to strike defendants' reply in support of their motion for judgment on the pleadings. *See* Dkt. 46. However, plaintiff did not request this Court's permission to file either an overlength brief or a sur-reply. *See* Dkt.; *see also* Local Civil Rule 7(e)–(g). Plaintiff has already been warned that although he is *pro se*, he must comply with this court's rules. *See* Dkt. 32. Therefore, the undersigned grants the motion to strike plaintiff's overlength and impermissible sur-reply. *See* Dkt. 46.

Defendants separately requested to have plaintiff's overlength, unsigned response opposing their motion for judgment on the pleadings stricken. *See* Dkt. 44, at 3. Because the undersigned has given substantive consideration to the arguments raised in plaintiff's response despite these violations and nevertheless recommends granting defendants' motion for judgment on the pleadings, the Court denies defendants' request.

Finally, defendants have requested that plaintiff's amended complaint be stricken, as is it unsigned. *See* Dkt. 44, at 2–3. This motion is denied, as plaintiff has submitted a signature page. *See* Dkt. 34, at 26.

**II. General Principles**

The same standard applies to a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to a motion to dismiss under Rule 12(b)(6). *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Dismissal under Rule

1  12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient
2  facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,
3  699 (9th Cir. 1990). A plaintiff's complaint must allege facts adequate to state a claim for relief
4  that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must
5  construe all allegations in the light most favorable to the nonmoving party. *See Bagley v. CMC*
6  *Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Finally, a dismissal of even a *pro se*
7  complaint may be without leave to amend if amendment would be futile. *See Flowers v. First*
8  *Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).

**III. Official Capacity Claims under § 1983**

Plaintiff seeks only[1] damages from defendants. *See* Dkt. 33, at 17. Among other allegations, plaintiff is asserting these claims against defendants in their official capacities. Dkt. 33, at 1. However, it is well-established that the Eleventh Amendment bars claims for damage against an official in his or her official capacity. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because any amendment of plaintiff's complaint in this regard would be futile, defendants' request that these official capacity claims be dismissed with prejudice should be granted.

**IV. Individual Capacity Claims under § 1983**

**A. First Amendment Claims**

Defendants argue that qualified immunity shields them from liability for alleged constitutional violations. Dkt. 39, at 12.

---

[1] Although plaintiff also includes in his "prayer for relief" a request for certification under 28 U.S.C. § 2403, that statute does not apply here because defendants are state employees. *See* 28 U.S.C. § 2403(b).

1    Qualified immunity shields government officials from suit in their individual capacities if
2 their actions "did not violate 'clearly established statutory or constitutional rights of which a
3 reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting
4 *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Supreme Court has repeatedly stressed the
5 importance of deciding immunity questions at the earliest possible stage in the litigation.
6 *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

7    There are two parts to the qualified immunity inquiry, which a court may address in
8 either order:  "whether the facts that a plaintiff has alleged . . . make out a violation of a
9 constitutional right" and whether the right was clearly established at the time of the alleged
10 misconduct.  *Pearson*, 555 U.S. at 232.   "A clearly established right is one that is 'sufficiently
11 clear that every reasonable official would have understood that what he is doing violates that
12 right.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S.
13 658, 664 (2012)).

14    It is a plaintiff's burden to establish that a right allegedly violated was clearly established
15 at the time of the violation; it is a defendant's burden to establish that a defendant reasonably
16 believed that the alleged conduct was lawful.  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir.
17 2002).  A clearly established right is one that was settled law because of either controlling
18 authority or a robust consensus of persuasive authority.  *District of Columbia v. Wesby*, __ U.S.
19 __, 138 S. Ct. 577, 589–90 (2018).  Whether or not a constitutional right is "clearly established"
20 is a question of law for a judge to decide.  *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).

21    **1.  Incoming Mail:  EWU Student, Mental Health Professional, and**
22 **Financial Executive Records**

23
24

1       According to plaintiff, portions of his incoming mail—specifically records pertaining to

2 EWU student information, a health care professional who had examined plaintiff's relative, and

3 certain financial executives of an investment company—were wrongfully rejected on the basis of

4 an allegedly unconstitutional "blanket ban" on prisoners possessing other persons' information.

5 *See* Dkt. 33, at 14.  Plaintiff raises a variety of claims under the First Amendment—that the

6 rejection of his incoming mail was unconstitutional under the Supreme Court's test in *Turner v.*

7 *Safley*, 482 U.S. 78 (1987), and that it violated his rights to freedom of association, of speech,

8 from censorship, and of assembly.  *See* Dkt. 33, at 5–6.  Plaintiffs' arguments are a challenge to

9 WAC 137-25-030 #739 (*see* Dkt. 33, at 20), which states that prisoners may not possess,

10       any person's identification information . . . when not voluntarily given.
      Identification information includes Social Security numbers, home addresses,
11       telephone numbers, driver's license numbers, medical, personnel, financial, or real
      estate information, bank or credit card numbers, or other like information not
12       authorized by the superintendent.

13       As allowed by *Pearson v. Callahan*, the undersigned proceeds directly to the second part

14 of the qualified immunity inquiry—whether the law regarding the alleged First Amendment

15 violation was clearly established at the time.  Plaintiff argues that the law was clearly established

16 because he informed defendants that they were violating his constitutional rights.  *See* Dkt. 43, at

17 17.  To the contrary, that a right is clearly established is a question of law that is settled by case

18 law, not an individual's statements.  *See Wesby*, 138 S. Ct. at 589–90.

19       The right at issue must be defined at a level of specificity greater than simply asking

20 whether the constitutional rights at issue—for instance, the right to receive mail—were clearly

21 established at the time.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("[T]his inquiry, it is vital

22 to note, must be undertaken in light of the specific context of the case, not as a broad general

23 proposition[.]"), *overruled on other grounds by Pearson*, 555 U.S. 223.  Here, the question is

24

REPORT AND RECOMMENDATION - 7

whether it was clearly established that preventing a prisoner from possessing third persons' personal information violated the First Amendment. Plaintiff has come forward with no particular case law or argument in his response to the motion for judgment on the pleadings—or in his amended complaint—despite that it is his burden to show that a right is clearly established. *Sorrels*, 290 F.3d at 969.

Nor is the undersigned aware of any case finding that prisoners have a right to possess identifying information about members of the public. Indeed, defendants have provided persuasive authority that prisoners do not have such a right. In *Sikorski v. Whorton*, the District Court of Nevada held that there was no such unqualified right for a prisoner to possess names and addresses of signatories to a petition. 631 F. Supp. 2d 1327, 1343–44 (D. Nev. 2009). And in an unpublished opinion, this Court upheld a restriction barring prisoners from possessing staff members' personal information against a First Amendment challenge. *Barstad v. Dep't of Corrs.*, C14-0523 RSL MAT, 2015 WL 1867082, at *8, *14. Finally, the undersigned notes *Ivey v. Mooney*, a District of Minnesota case in which unit staff censored third party personal information from a detainee's legal paperwork and the court found that qualified immunity applied because "[t]he First Amendment does not protect the right to receive and possess written material that is essentially contraband." CV05-1215 JMR/AJB, 2006 WL 618110, at *6 (March 9, 2006).

To the extent that plaintiff is arguing that he had a clearly established First Amendment right to records under the PRA, there is no such clearly established right to government records, either. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 15, (1978) (plurality) (no First Amendment right of access to government information), *quoted in Hanson v. City of Spokane*, 2:19-cv-31-RMP, 2019 WL 544956, at *2 (Feb. 11, 2019) (no First Amendment right to PRA records).

1 | Thus, it is also immaterial whether or not the Court agrees that the PRA required disclosure of
2 | the records that plaintiff received.  *See* Dkt. 43, at 3–4.

3 | For these reasons, the undersigned recommends finding that as a matter of law, there is
4 | no clearly established right for prisoners to possess information about members of the public.
5 | There is also no set of facts that could save this claim, as it fails as a matter of law.  Therefore,
6 | the claim that restrictions on plaintiff's incoming mail violated the First Amendment should be
7 | dismissed with prejudice.

**2. Outgoing Mail—Letter to Brother**

9 | Plaintiff's other First Amendment claim is that his outgoing mail—a letter to his brother
10 | asking him to place a personal advertisement for plaintiff—was improperly rejected under an
11 | allegedly unconstitutional DOC policy that restricted sending outgoing mail that contained
12 | correspondence for a third party.  *See* Dkt. 33, at 7.  Again, plaintiff brings claims of violation of
13 | his free speech and freedom of association rights.  *See* Dkt. 33, at 8–9.

14 | Regarding this claim, qualified immunity applies if it was not clearly established that a
15 | prisoner has a right to communicate through an intermediary to reach third persons.  For the
16 | reasons noted above, plaintiff's arguments on this point fail to establish that there was such a
17 | clearly established right.

18 | Moreover, defendants provide this Court's unpublished opinion finding that as a general
19 | matter, restricting prisoners' communications with third persons is permissible.  *See Barstad*,
20 | 2015 WL 1867082, at *16 (finding that under the circumstances, however, there was inadequate
21 | argument to decide the matter regarding a particular type of outgoing mail).  Defendants also
22 | provide a laundry list of unpublished cases upholding this—or similar—policies.  *See* Dkt. 36, at
23 | 19.  Therefore, the Court finds that qualified immunity applies based on the failure to show a

1  clearly established right was violated.  Defendants' motion for judgment on the pleadings
2  regarding this claim should be granted and the claim should be dismissed with prejudice.

### B. Remaining Constitutional Claims

The remaining § 1983 claims raised by plaintiff are that the incoming and outgoing mail restrictions violated Equal Protection and Due Process. *See, e.g.*, Dkt. 33, at 5–6, 16. To the extent that he explains the basis for his due process claim, plaintiff appears to be challenging the regulation as impermissibly infringing upon his right to receive mail. *See, e.g.*, Dkt. 33, at 5–6, 16. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996), *overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007). Because plaintiff's claim, as argued, is coextensive with his First Amendment claim, his substantive due process claim should be dismissed.

Moreover, although plaintiff claims that the state actions violated Equal Protection, he does not identify a similarly situated class treated differently from him or allege that defendants intentionally discriminated against him on the basis of his membership in a protected class— necessary elements to make out a cognizable claim of violation of Equal Protection. *See Washington v. Davis*, 426 U.S. 229, 239 (1976); *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963). His Equal Protection claims should therefore also be dismissed.

### IV. State Tort Claims

Defendants request dismissal with prejudice of plaintiff's state law claims because plaintiff has not complied with statutory preconditions for bringing such a suit. *See* Dkt. 39, at 8.

Because the only information referenced in plaintiff's complaint about his state tort claim is his cursory statement that his tort claim was filed on April 17 and denied on April 23 (*see* Dkt. 33), defendants necessarily rely on materials outside the complaint in support of this argument. *See* Dkt. 39, at 9 (citing Dkts. 25, 25-2, 27, 31); Dkt. 44, at 4–9. Of course, considering materials outside the pleadings converts a Rule 12 motion to a Rule 56 motion and requires that the Court give all parties an opportunity to present pertinent materials. *See* Fed. R. Civ. P. 12(d).

Defendants make no argument that the materials upon which they rely fit within an exception to the rule that the court must confine its review on a Rule 12 motion to matters within the pleadings. *See* Dkt. 39. Nor do they appear to recognize that their reliance on matters outside the complaint generally is more appropriate for a summary judgment motion than a motion for judgment on the pleadings.

The Court has discretion, if it dismisses plaintiff's federal claims as recommended herein, to decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). The undersigned therefore recommends that the Court decline to convert the motion for judgment on the pleadings to a summary judgment motion and that the Court instead dismiss the state law claims without prejudice. *See Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) (noting discretion of the Court in determining whether to convert a rule 12 motion to a rule 56 motion).

**V. IFP on Appeal**

The Court recommends revoking plaintiff's *in forma pauperis* status for purposes of appeal. IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if

1  he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any

2  arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*

3  *Williams*, 490 U.S. 319, 325 (1989). Because any appeal from this matter would lack an

4  arguable basis in law, plaintiff's IFP status should be revoked for purposes of any appeal.

## CONCLUSION

Plaintiff's motion to strike (Dkt. 46) is stricken from the docket. Defendants' motion for judgment on the pleadings (Dkt. 39) should be granted and plaintiff's claims should be dismissed with prejudice, except that his claims of violation of Equal Protection and Due Process brought again defendants in their individual capacities and his claims of violation of state law should be dismissed without prejudice. Plaintiff's IFP status should be revoked for purposes of any appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **January 31, 2020**, as noted in the caption.

Dated this 14th day of January, 2020.

J. Richard Creatura
United States Magistrate Judge